# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION
No. 5:13-CV-221-F

| | |
|---|---|
| DONNA HEWITT WATKINS, as<br>Administrator of the Estate of Eric Eugene<br>Black, deceased, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>)<br>) |
| | ) **ORDER** |
| v. | )<br>) |
| GERALD A. ASHLEY and TRULITE<br>GLASS & ALUMINUM SOLUTIONS,<br>LLC, formerly known as Arch Aluminum<br>& Glass, LLC, | )<br>)<br>)<br>) |
| | ) |
| Defendants. | ) |

This matter is before the court on the Motion to Remand [DE-12] filed by Plaintiff Donna Hewitt Watkins, as Administrator of the Estate of Eric Eugene Black, deceased ("Watkins" or "Plaintiff") and the Motions to Dismiss [DE-15; DE-17] filed by Defendants Gerald A. Ashley ("Ashley") and Trulite Glass & Aluminum Solutions, LLC ("Trulite").

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 5, 2011, Eric Eugene Black died at a glass and aluminum facility owned by Defendant Trulite and located in Youngsville, North Carolina. Compl. [DE-1-1] ¶¶ 13, 18. At the time of his death, Black was working for Act Electric, a company that Trulite had hired to install electrical conduit on the ceiling of the Youngsville Plant. *Id.* ¶¶ 46, 47. As part of his work, Black was required to be elevated on a scissor lift in order to install the electrical conduit. *Id.* ¶ 77. While Black was working, a Trulite employee began operating a Gantry crane, which allegedly was virtually silent and provided no warning to Black that a portion of the bridge of the crane was headed

toward the scissor lift on which Black was standing. *Id.* ¶¶ 80, 84-86. The bridge of the Gantry crane crashed into the scissor lift and knocked Black to his death. *Id.* ¶ 96.

Plaintiff Watkins, as Administrator of Black's estate, filed suit in Wake County Superior Court on February 25, 2013, alleging claims against both Defendants Ashley and Trulite. Plaintiff alleges that Ashley, as "Plant Manager," was responsible for safety at the Plant. Compl. [DE-1-1] ¶ 109. Both Watkins and Ashley are residents of North Carolina. *Id.* ¶¶ 5, 10. Defendants were served with process on February 25, 2013.

Defendant Trulite filed a Notice of Removal [DE-1] in this court on March 26, 2013, based on this court's diversity of citizenship jurisdiction under 28 U.S.C. § 1332(a). Defendant Trulite asserted in the Notice of Removal that this court's assertion of diversity of citizenship jurisdiction was appropriate because, under the doctrine of fraudulent joinder, there was no colorable claim against Defendant Ashley. Plaintiff timely filed her Motion to Remand [DE-12] on April 22, 2013, arguing that she has stated a colorable claim against Defendant Ashley. Defendants thereafter filed Motions to Dismiss [DE-15; DE-17] the various claims against them.

## II. DISCUSSION

Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant" to the appropriate court. 28 U.S.C. § 1441(a). The two principal bases for original jurisdiction are diversity of citizenship of the parties and the presence of a federal question. 28 U.S.C. §§ 1331, 1332. In this case, Ashley and Trulite filed a notice of removal in this court on the basis of diversity jurisdiction.

The removing parties, as the ones invoking this court's jurisdiction, bear the burden of showing that removal is proper. *Schwenk v. Cobra Mfg. Co.*, 322 F.Supp. 2d 676, 678 (E.D. Va.

2

2004). Because removal raises federal concerns, a court must strictly construe removal jurisdiction. *Mulcahey v. Columbia Organic Chems. Co., Inc.*, 29 F. 3d 148, 151 (4th Cir. 1994). "If federal jurisdiction is doubtful, a remand is necessary." *Id.*; *see also* 28 U.S.C. § 1447(c). To invoke a court's diversity jurisdiction, the parties must be complete diverse, meaning that none of the plaintiffs share citizenship with any of the defendants, and the amount in controversy must exceed the jurisdictional threshold of $75,000. 28 U.S.C. § 1332; *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999). Moreover, an action based on the court's diversity jurisdiction "shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b); *Palisades Collections, LLC, v. Shorts*, 552 F.3d 327, 331 (4th Cir. 2008) ("[I]n a diversity case, a defendant cannot remove a case from its home forum . . . .").

In this case, even though Watkins and Ashley are both residents of North Carolina, and therefore diversity of citizenship is seemingly not present, Defendants contend that removal is still appropriate under the doctrine of fraudulent joinder. *See* Notice of Removal [DE-1] ¶ 8. This doctrine allows the court to disregard the citizenship of the non-diverse defendant and retain federal jurisdiction. *Mayes*, 198 F.3d at 461. Specifically, a defendant alleging fraudulent joinder must show either "outright fraud in the plaintiff's pleading of jurisdictional facts" or that "there is no possibility that the plaintiff would be able to establish a cause of action" against the non-diverse defendant. *Hartley v. CSC Transp. Inc.*, 187 F.3d 422, 424 (4th Cir. 1999). The former situation is not implicated here; rather, the question is whether Defendants have shown that there is no possibility Watkins will able to establish a cause of action against Ashley.

In answering that question, the court must resolve all legal and factual issues in favor of the

3

plaintiff. *Id.* ("The party alleging fraudulent joinder bears a heavy burden–it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor."). As the Fourth Circuit has recognized, the standard under the fraudulent joinder doctrine is even more favorable to a plaintiff than that applied to a motion to dismiss. *Id.* "Once the court identifies [a] glimmer of hope for the plaintiff, the jurisdictional inquiry ends." *Id.* at 426. Additionally, the court notes that it may not "delv[e] too far into the merits of deciding a jurisdictional question," because

[j]urisdictional rules direct judicial traffic. They function to steer litigation to the proper forum with a minimum of preliminary fuss. The best way to advance this objective is to accept the parties joined on the face of the complaint unless joinder is clearly improper. To permit extensive litigation of the merits of a case while determining jurisdiction thwarts the purpose of jurisdictional rules.

*Id.*

Here, Defendants have not met the heavy burden of showing, after the court resolves all legal and factual issues in Plaintiff's favor, that there is no possibility Plaintiff can establish a cause of action against Defendant Ashley. Defendants raise several challenges to Plaintiff's sole claim against Defendant Ashley–negligence–including that (1) as a matter of law, Ashley owed no duty to Plaintiff's decedent; (2) Plaintiff failed to allege that Ashley breached any duty to Plaintiff's decedent; and (3) Plaintiff has failed to allege sufficient facts to show causation.

Under North Carolina law, "[t]o state a common law negligence claim, [a] plaintiff must show (1) a legal duty; (2) a breach thereof; and (3) injury proximately caused by the breach." *Bridges v. Parrish*, 366 N.C. 539, ___, 742 S.E.2d 794, 796 (2013) (internal quotation marks omitted). With regard to the first element, duty is defined as an "obligation, recognized by the law, requiring the person to conform to a certain standard of conduct, for the protection of others against

4

unreasonable risks." *Davis v. North Carolina Dep't of Human Resources*, 121 N.C. App. 105, 112, 465 S.E.2d 2, 6 (1995) (internal quotation marks omitted). In this case, Defendants contend Plaintiff cannot, as a matter of law, show that Defendant Ashley owed Plaintiff's decedent a duty which would support either the premises liability or negligent supervision theories of the negligence claim.

Whatever the merit of Defendants' arguments with regard to Ashley's duty under the theories of premises liability and negligent supervision, the court notes that Plaintiff also cites to North Carolina appellate cases for the proposition that "[t]he law imposes upon every person who enters upon an active course of conduct the positive duty to exercise ordinary care to protect others from harm and calls a violation of that duty negligence." Pl.'s Omnibus Mem. in Opp. to Mots. to Dismiss [DE-21] p. 17 (citing *Council v. Dickersons, Inc.*, 233 N.C. 472, 64 S.E.2d 552 (1951)). Some decisions of the North Carolina Court of Appeals have interpreted this maxim, while also relying on Restatement (Second) of Torts § 324A, to recognize that "under certain circumstances, one who undertakes to render services to another which he should recognize as necessary for the protection of a third person, or his property, is subject to the liability to the third person, for injuries resulting from his failure to exercise reasonable care in such undertaking." *Quail Hollow East Condominium Ass'n v. Donald J. Scholz Co.*, 47 N.C. App. 518, 522, 268 S.E.2d 12, 15 (1980); *see also Mozingo v. Pitt County Mem'l Hosp.*, 101 N.C. App. 578, 587, 400 S.E.2d 747, 752 (1991). Section 324A of the Second Restatement of Torts states:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
(a) his failure to exercise reasonable care increases the risk of such harm, or
(b) he has undertaken to perform a duty owed by the other to the third person, or
(c) the harm is suffered because of reliance of the other or the third person upon the

5

undertaking.

Restatement (Second) of Torts § 324A (1965).

> Pertinent to this case, an illustration in this Restatement § 324A provides the following:

> The A Company employs B as superintendent of building construction work. One of his duties to A Company is to inspect a scaffold erected by an independent contractor, to make sure that it is safe for A Company's workmen. B negligently fails to inspect the scaffold, and as a result of the defective condition, which would have been discovered by proper inspection, the scaffold collapses and C, a workman employed by A Company, is injured. B is subject to liability to C.

*Id.* Here, Plaintiff has alleged that "Defendant Ashley was responsible for safety at the Plant and for practices and procedures dealing with outside contractors" and "was responsible for management of the Crane Operator." Compl. [DE-1-1] ¶¶ 109-10. Although the North Carolina Supreme Court has yet to adopt the analysis in Restatement § 324A, and the facts in the cases where it has been applied by the North Carolina Court of Appeals are distinguishable, the court nevertheless finds that *Quail Hollow* and *Mozingo* cases provide the "glimmer of hope" Plaintiff needs. *Hartley*, 187 F.3d at 426.

Nor can the court say, as a matter of law, that Plaintiff cannot show breach or causation. Plaintiff has alleged that Ashley breached the duties specified above by, among other things, failing to ensure that the Gantry Crane was equipped with proper warning devices, and that Gantry Crane bridge, without warning to Plaintiff's decedent, crashed into the scissor lift he was on and knocked him to his death. Compl. [DE-1-1] ¶¶ 84-86, 96, 98(u), 112.

The court recognizes that Defendants have submitted the Declaration of Ashley, stating that he is not the safety coordinator ro the Youngsville Plant, was not a member of Youngsville Plant's Safety Committee, and does not have the authority to modify safety procedures. Decl. of Ashley

6

[DE-1-2]. Because the court has to take all of the allegations in Plaintiff's Complaint as true, however, the court cannot treat Ashley's declaration as "as conclusive proof of the outright frivolity of plaintiff's claim against him." *Vick v. Kapstone Kraft Paper Corp.*, No. 4:10-CV-78-FL, 2011 WL 841073, at *4 (E.D.N.C. February 9, 2011) (memorandum and recommendation), *adopted by* 2011 WL 841063 (E.D.N.C. March 7, 2011).

The court expresses no opinion on whether Plaintiff will ultimately be successful in her claim against Ashley, other than to reiterate that there is a "glimmer of hope." Whether that glimmer results in a cognizable claim will be for the state court to decide. In any event, because Defendants cannot meet the heavy burden of showing there is no possibility that Plaintiff has a claim against Ashley—which is a different question than whether Plaintiff has stated a claim that withstands Rule 12(b)(6) scrutiny—Plaintiff's Motion to Remand [DE-12] is ALLOWED.

Because the court has determined that it cannot exercise removal jurisdiction over this case, the Motions to Dismiss [DE-15; DE-17] are DENIED as moot and without prejudice.

## III. CONCLUSION

For the foregoing reasons, the Motion to Remand [DE-12] is ALLOWED. Defendants' Motions to Dismiss [DE-15; DE-17] are DENIED as moot and without prejudice. The Clerk of Court is DIRECTED to remand this case to the Superior Court of Wake County.

SO ORDERED. This, the __6__<sup>th</sup> day of February, 2014.

James C. Fox
James C. Fox
Senior United States District Judge

8